[Cite as *Pizzulo v. Flask*, 2024-Ohio-778.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| JORYAN EVAN PIZZULO,<br><br>Relator,<br><br>- vs -<br><br>VINCENT S. FLASK,<br>CITY AUDITOR, et al.,<br><br>Respondents. | CASE NO. 2023-T-0104<br><br>Original Action for Mandamus |

**P E R   C U R I A M**
**O P I N I O N**

Decided: March 4, 2024
Judgment: Petition dismissed

*Joryan Evan Pizzulo*, pro se, 3320 Dunston Drive, N.W. #2, Warren, OH 44485 (Relator).

*Thomas J. Wilson*, Comstock, Springer & Wilson Co., LPA, 100 Federal Plaza East, Suite 926, Youngstown, OH 44503 (For Respondent Vincent Flask).

*Gareth A. Whaley* and *Jeffrey Stankunas*, Isaac Wiles & Burkholder, LLC, Two Miranova Place, Suite 700, Columbus, OH 43215 (For Respondent Stephanie Penrose).

PER CURIAM.

{¶1}   On December 27, 2023, relator, Joryan Pizzulo, filed a pro se "Verified Complaint for Writ of Mandamus and Injunctive Relief" in this court. Relator alleged that respondents, Vicent Flask in his capacity as Warren City Auditor (Auditor) and Stephanie Penrose in her capacity as Director of the Trumbull County Board of Elections (Board),

had improperly disqualified 221 signatures for a referendum petition, including his own. [1] Relator sought an injunction to prevent the underlying municipal ordinance from going into effect pending his challenge to the disqualification of the signatures for the referendum petition.

{¶2} On January 5, 2024, relator filed an "Amended Complaint for Writ of Mandamus and Injunctive Relief" in which he included a missing page that had not been attached to his original filing.

{¶3} Relator's complaint alleged that on November 8, 2023, the City of Warren passed ordinance 13287-2023 granting elected officials a pay raise. A referendum petition was circulated, and relator signed the petition.

{¶4} That petition was submitted to the Auditor on December 8, 2023. The Auditor delivered the referendum petition to the Board on December 18, 2023.

{¶5} Relator's complaint alleged that the referendum petition required 950 certified signatures and that the Board only certified 901. The Board invalidated the signatures of 221 electors.

{¶6} Relator's complaint requests that this Court give "all the 221 electors who signed the petition time to complete AFFIDAVITs and seek hearing and review" on the basis that if 49 additional signatures could be certified, the referendum petition would have sufficient signatures to appear on the ballot.

---

1. Although not specifically plead as such, we interpret relator's claims as against the entities rather than the individuals named, as suits against individuals acting in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611, fn. 55 (1978).

2

Case No. 2023-T-0104

**{¶7}** Relator stated that he "completed a standard Ohio Voter Registration and Information Update Form changing address from his previous residence * * * to his new apartment" both of which were located in the City of Warren. Relator attached an affidavit to his complaint which stated that he signed a change of address form updating his voting address on December 7, 2023, and that he wants his signature to count toward the referendum petition.

**{¶8}** Ordinance 13287-2023 went into effect on January 1, 2024.

**{¶9}** Service was made on the Board and the Auditor on January 9, 2024. On January 12, 2024, we issued an Alternative Writ ordering respondents to move, plead, or otherwise respond to relator's petition by January 19, 2024. We also designated this an expedited election case and, pursuant to Loc.R. 101(E), provided that all responses to motions shall be filed within seven days and that there shall be no reply to any motion.

**{¶10}** On January 19, 2024, the Board filed a Civ.R. 12(B)(6) motion to dismiss. The Board's Motion to Dismiss argued that relator failed to state a claim upon which relief could be granted because: (1) relator failed to allege that the Board had incorrectly invalidated his signature and did "not specify which address he wrote on the petition. He does not allege that this [change of address] card was submitted to the Board before his signature was processed;" (2) relator lacked standing to challenge the Board's decision to invalidate signatures not his own; and (3) the Board had no statutory or due process requirement to provide a hearing on the question of his invalidated signature pursuant to *State ex rel. Nauth v. Dirham,* 161 Ohio St.3d 365, 2020-Ohio-4208, 163 N.E.3d 526.

**{¶11}** On January 26, 2024, the Auditor filed a Motion for Leave to File Instanter and concurrently filed a Motion to Dismiss. We granted the Motion to File Instanter. The

3

Auditor's Motion to Dismiss Argued that relator, as a pro se litigant, cannot seek this writ on behalf of other parties. Because of this, none of the other referenced individuals whose signatures the Board invalidated are parties to this action and even if relator's sole signature on the referendum petition were counted, there would still not be sufficient signatures for the referendum petition to be placed on the ballot. Therefore, the Auditor argued that relator's petition should be dismissed because he has not set forth a claim upon which relief can be granted.

{¶12} On February 1, 2022, relator filed a response in opposition to the Board's motion to dismiss. Relator argued that he and other individuals who had purportedly signed the referendum petition had appealed to the Board, but the Board had not provided a written response as to "how to handle challenges to denied electors signatures aka super 'votes' counting, thus the disenfranchisement under federal and state laws, both common and revised." He argued that respondents had not addressed the due process issue for the appeal process. He said that he was seeking relief from this Court in mandamus so that relator "and others like him, one of who lived and voted at her address for 50 years," could have their signatures validated by the Board.

{¶13} Relator did not file a response in opposition to the Auditor's Motion to Dismiss.

{¶14} On February 9, 2024, the Board filed a Motion for Summary Judgment, producing evidentiary materials relevant to relator's change of address and renewing its claims that relator has not made a claim upon which relief can be granted as previously set forth in the Board's Motion to Dismiss.

4

Case No. 2023-T-0104

**{¶15}** Although the Board has filed a Motion for Summary Judgment, we decide this case solely on the standards set forth in Crim.R. 12(B)(6).

**{¶16}** Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. "To be entitled to a writ of mandamus, a relator must be able to prove that: (1) a clear legal right to have a specific act performed by a public official; (2) the public official has a clear legal duty to perform that act; and (3) there is no legal remedy that could be pursued to adequately resolve the matter." *State ex rel. Vance v. Kontos*, 11th Dist. Trumbull No. 2014-T-0078, 2014-Ohio-5080, ¶ 9.

**{¶17}** A relator seeking a writ of mandamus must prove entitlement to the writ by clear and convincing evidence. *State ex rel. Ward v. Reed*, 141 Ohio St.3d 50, 2014-Ohio-4512, 21 N.E.3d 303, ¶ 10. "A court can dismiss a mandamus action under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted if, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in the relator's favor, it appears beyond doubt that he can prove no set of facts entitling him to the requested writ of mandamus." *State ex rel. Nyamusevya v. Hawkins*, 165 Ohio St.3d 22, 2021-Ohio-1122, 175 N.E.3d 495, ¶ 10, citing *State ex rel. Russell v. Thornton,* 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 9.

**{¶18}** In *State ex rel. Nauth v. Dirham,* 161 Ohio St.3d 365, 2020-Ohio-4208, 163 N.E.3d 526, the relators, Nauth and a group called Concerned Citizens of Medina City, filed a referendum petition. *Id.* at ¶ 1. That petition fell 44 signatures short of qualifying for the ballot.

5

Case No. 2023-T-0104

{¶19}  The relators submitted an "appeal/request" to the Medina County Board claiming that the Board had improperly invalidated signatures and thus deprived the electors of their right to participate in the referendum process. *Id.* at ¶ 5. The Medina County Board did not respond to the request, and the relators then submitted a protest to the Board. *Id.* at ¶ 6. The Board similarly took no action and the relators asked that the Medina City Finance Director resubmit the signatures to the Board. *Id.* at ¶ 7. The Finance Director did not do so, and the relators made a final request for a public hearing to the Board, which was similarly ignored. *Id.* at ¶ 8. Ultimately, the relators filed a petition for writ of mandamus in the Ohio Supreme Court to direct the Medina County Board of Elections to certify 47 signatures as valid, which the Medina County Board had disqualified. *Id.* at ¶ 9.

{¶20}  Under R.C. 731.29, a referendum petition may not be placed on the ballot until "(1) the board validates a sufficient number of signatures;" (2) the city auditor or village clerk determines the sufficiency and validity of the petition; and (3) "the board determines under R.C. 3501.11(K) and 3501.39 that the petition is sufficient and valid." *Id.* at ¶ 23, citing *State ex rel. Sinay v. Sodders,* 80 Ohio St.3d 224, 231, 685 N.E.2d 754 (1997).

{¶21}  The Court said that the relators did not "get past the first step, because the board did not validate a sufficient number of signatures for the referendum to qualify for the ballot." *Id.* While a statutory mechanism existed for a protestor to challenge a municipal referendum petition being certified for the ballot, no such mechanism existed "for a referendum proponent to protest a finding by a board of elections that a petition contained an insufficient number of signatures. Relators, therefore, have no statutory right

6

to a hearing before the board." *Id.* Therefore, the Court concluded that a "mandamus action provides all the process that relators are due" as a remedy. *Id.* at ¶ 24.

{¶22} To demonstrate a clear legal right to relief and clear legal duty to act, the relators must "show that the board and/or [the finance director] engaged in fraud, corruption, or an abuse of discretion." *Id.* at ¶ 13. The relators did not allege fraud or corruption but did contend there was an abuse of discretion "in taking actions that have kept the referendum petition from being certified * * *." *Id.*

{¶23} The relators failed to demonstrate an abuse of discretion because they failed to show by clear and convincing evidence that the Board had invalidated the 47 signatures, let alone that they had been invalidated for not matching the alleged signer's voter-registrations cards. *Id.* at ¶ 28. This failure resulted because "none the affidavits" from those voters whose signatures were disqualified "asserted personal knowledge that the board had invalidated an affiant's signature on that basis or any other. And crucially, none of the part-petitions containing the signatures of the 47 affiants, or any other evidence showing which signatures were invalidated, has been submitted as evidence." *Id.* at ¶ 29.

{¶24} Turning to this case, even after all factual allegations of the complaint are presumed true and all reasonable inferences are made in the relator's favor, he fails to set forth facts entitling him to the requested writ of mandamus.

{¶25} Relator's petition for writ of mandamus fails to state a claim upon which relief can be granted for at least two reasons. First, to establish an abuse of discretion, relator must demonstrate respondents' "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707,

7

¶ 9, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). Relator has not claimed that the Board or Auditor acted through fraud or corruption.

{¶26} Although relator vaguely claims that he signed a change of address form on December 7, 2023, he does not allege that, at the time he signed the petition, he had submitted a change of address form with the Board. "An elector must be 'registered' in order to either vote or sign such petition *on the day* that he or she decides to exercise the right. In either case, that person must have filed a change of residence notice with the board of elections." (Emphasis sic.) *In re Protest Filed by Citizens for Merit Selection of Judges, Inc.*, 49 Ohio St.3d 102, 106, 551 N.E.2d 150 (1990). Relator has not claimed that he had submitted his change of address form to the Board by the time the Board certified the referendum petition signatures on December 20, 2023. Because of this, he has not pled any fact which would demonstrate that the Board's decision to invalidate his signature was an abuse of discretion.

{¶27} Second, and more importantly, relator does not have standing to bring this action on behalf of other invalidated signatories. "A party lacks standing unless he has, in an individual or representative capacity, 'some real interest in the subject matter of the action.'" *State ex rel. Ames v. Portage Cty. Bd. of Revision*, 166 Ohio St.3d 225, 2021-Ohio-4486, 184 N.E.3d 90, ¶ 10, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 298 N.E.2d 515 (1973), syllabus. To have standing in a mandamus action, the relator must be "'beneficially interested' in the case." *State ex rel. Hills & Dales v. Plain Local School Dist. Bd. of Edn.*, 158 Ohio St.3d 303, 2019-Ohio-5160, 141 N.E.3d 189, ¶ 9, quoting *State ex rel. Spencer v. E. Liverpool Planning Comm.*,

8

80 Ohio St.3d 297, 299, 685 N.E.2d 1251 (1997). "'[T]he applicable test is whether [a] relator[ ] would be directly benefited or injured by a judgment in the case.'" *Ames*, quoting *Sinay,* 80 Ohio St.3d at 226. If a party does not have standing, the mandamus action will be dismissed. *Id.*

{¶28} There is no dispute that relator has standing to bring the claim as it relates to his own signature. However, relator's suit does not name any of the other invalidated signatories as parties. Unlike *Nauth*, relator is not the proponent of the referendum petition and does not litigate the rights on behalf of those other individuals invalidated from the petition. Because of this, even if we were to accept his claims as true and find that the Board abused its discretion in disqualifying his signature, relator does not have standing to assert similar claims on behalf of those other signatories the Board invalidated. Relator does not have a clear legal right to challenge, and the Board does not have a clear legal duty to review, the determination that the Board improperly invalidated the other 220 signatures.

{¶29} For the foregoing reasons, respondents' Motions to Dismiss are granted and relator's complaint for Writ of Mandamus is dismissed. All other pending motions are overruled as moot.

MATT LYNCH, J., JOHN J. EKLUND, J., ROBERT J. PATTON, J., concur.

9

Case No. 2023-T-0104